IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OLIVE GROUP FZ-LLC, | ) |
| | ) |
| *Petitioner*, | ) |
| v. | ) Case No. |
| | ) |
| AFGHANISTAN CIVIL AVIATION AUTHORITY, GOVERNMENT OF ISLAMIC REPUBLIC OF AFGHANISTAN | ) ) ) |
| | ) |
| *Respondent*. | ) |

**PETITION TO RECOGNIZE AND ENFORCE FOREIGN ARBITRATION AWARD**

Petitioner, Olive Group FZ-LLC ("**Olive Group**" or "**Petitioner**"), by and through its undersigned counsel, submits this Petition to Recognize and Enforce Foreign Arbitration Award and alleges as follows:

**INTRODUCTION**

1. Petitioner is commencing this proceeding to recognize and enforce a foreign arbitration award rendered in Dubai, United Arab Emirates (the "**Final Award**") and to have judgment entered thereon, pursuant to Section 207 of the Federal Arbitration Act, 9 U.S.C. § 207 and Article III of United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, (the "**New York Convention**"). A true and correct copy of the Final Award, issued by the arbitrator on November 28, 2023, is attached as Exhibit 1 to the Affidavit of Enayat Qasimi, Esquire ("**Qasimi Affidavit**"), submitted herewith.

**PARTIES**

2. Petitioner is a Dubai free-zone limited liability company established under the laws of the United Arab Emirates, with its principal place of business located in Dubai, United Arab Emirates. Petitioner is a private security company with extensive experience and expertise

in different security fields, particularly in airport and aviation security. Petitioner has supported and provided aviation security related services to clients in various countries in the emerging and frontier markets, including Afghanistan, Iraq, and Yemen. Petitioner is an indirect wholly-owned subsidiary of Constellis Holdings, LLC, a limited liability company organized under the laws of the State of Delaware.

3. At all times relevant herein, Respondent, Afghanistan Civil Aviation Authority ("**ACAA**" or "**Respondent**"), has been an agency of the Government of Afghanistan. ACAA was in charge of management and regulation of air transportation, management of airspace and management and operation of airports in Afghanistan. ACAA has existed and operated in accordance with Afghanistan's Civil Aviation Law, codified in Afghanistan Official Gazette No. 1093, dated 26/9/1391 (December 16, 2012), as amended.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action pursuant to 9 U.S.C. § 203, in that this is a civil action seeking recognition and enforcement of an award rendered in an arbitration falling under the New York Convention.

5. At all times relevant herein, Respondent has been an agency or instrumentality of the Government of Afghanistan, pursuant to 28 U.S.C. § 1603(b). The Government of Afghanistan, is a foreign state pursuant to 28 U.S.C. § 1603(a). For all purposes in this action, ACAA is deemed an alter ego of the Government of Afghanistan. Pursuant to 28 U.S.C. § 1603(a), a "foreign state" includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in 28 U.S.C. § 1603(b). As a result, this Court has personal jurisdiction over Respondent in this proceeding regardless of the nature or extent of Respondent's contacts with Washington, D.C. or the United States because the Government of

Afghanistan, as a foreign state, and its agencies and instrumentalities, are not entitled to due process protections. *See GSS Grp. Ltd. V. Nat'l Port Auth.*, 680 F.3d 805, 809 (D.C. Cir. 2012) ("[F]oreign sovereigns and their extensively-controlled instrumentalities are not 'persons' under the Fifth Amendment's Due Process Clause—and thus have no right to assert a personal jurisdiction defense." (citations omitted); *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 301-02 (D.C. Cir. 2005) (explaining that where a foreign state "exert[s] sufficient control over [an instrumentality] to make it an agent of the State," the instrumentality – like the foreign state itself – "cannot invoke the minimum contacts test to avoid the personal jurisdiction of the district court").

6.     Respondent is not entitled to sovereign immunity under 28 U.S.C. § 1605, because this case falls under the exception for cases brought to recognize and enforce arbitration awards that "are or may be governed by a treaty or other international agreement in force in the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6). In addition, this case falls under the exception for a case "in which the foreign state has waived its immunity either explicitly or by implication". *See* 28 U.S.C. § 1605(a)(2); *see also* Ex. 1 (ANAP Contract) at p. 8, Clause 8.2.5 of the Special Conditions of Contract ("the decision of the sole arbitrator . . . shall be final and binding and shall be enforceable in any court of competent jurisdiction, and the Parties hereby waive any objections to or claims of immunity in respect of such enforcement").

7.     Venue is proper in this judicial district pursuant to 9 U.S.C. § 204 because the parties' arbitration agreement and the enforcement of the arbitration award falls under the terms of the New York Convention. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(f).

**FACTS**

8. The parties' dispute arose from ACAA's multiple breaches of the contract between ACAA and Olive Group, Contract No. NPA/ACCA/96/NCS-1889/ICB dated August 4, 2018, under which Olive Group was to procure security services for four international airports in Afghanistan (the "**ANAP Contract**").

9. Olive Group disputed the legality of the unilateral modification and termination of the ANAP Contract, a "Lump Sum" contract, by ACAA, which deprived Olive Group of $9,185,452.47 USD (*i.e.* the remaining 25% of the 3-year contract). Olive Group also sought monetary damages as a result of ACAA's other material breaches of the ANAP Contract. By way of example only, ACAA illegally and unilaterally deducted a 10% "retention" amount totaling $2,755,635.74 USD from Olive Group's invoices to ACAA, and illegally and unilaterally deducted unjustified "penalties" from its payments to Olive Group totaling $1,280,967.55 USD.

10. On April 12, 2021, Olive Group commenced arbitration proceeding by way of a Notice of Arbitration, in accordance with the ANAP Contract and pursuant to Clause 8.2 of the General Conditions of the ANAP Contract ("**GCC**") and Special Conditions of the ANAP Contract ("**SCC**").

**The Arbitration Agreement**

11. Attached to the Qasimi Affidavit as Exhibit 2 is a true and correct copy of a duly certified copy of the ANAP Contract, containing, *inter alia*, the parties' agreement to arbitrate.

12. The ANAP Contract outlined a two-step dispute resolution process.

13. The first step involved the matter being referred to an "Adjudicator" within fourteen (14) days of the notification of disagreement of one party to the other. *See* GCC at Clause 8.2.

> **8.1 Amicable Settlement.** *"The Parties shall use their best efforts to settle amicably all disputes arising out of or in connection with this Contract or its interpretation."*
>
> **8.2 Dispute Settlement.**
>
> *8.2.1 If any dispute arises between the Employer [ACAA] and the Service Provider [Olive Group] in connection with, or arising out of, the Contract or the provision of the Services, whether during carrying out the Services or after their completion, the matter shall be referred to the Adjudicator within fourteen (14) days of the notification of disagreement of one party to the other.*
>
> *8.2.2 The Adjudicator shall give a decision in writing within twenty-eight (28) days of receipt of a notification of a dispute.*
>
> *8.2.3 The Adjudicator shall be paid by the hour at the rate specified in the BDS and SCC, together with reimbursable expenses of the types specified in the SCC, and the cost shall be divided equally between the Employer and the Service Provider, whatever decision is reached by the Adjudicator. Either party may refer a decision of the Adjudicator to an Arbitrator within twenty-eight (28) days of the Adjudicator's written decision. If neither party refers the dispute to arbitration within the above twenty-eight (28) days, the Adjudicator's decision will be final and binding.*

14. Pursuant to SCC, Clause 8.2.3, the Adjudicator was to be assigned by the Ministry of Justice. *See* Ex. 2 at p. 7.

15. The Ministry of Justice, however, declined to assign an Adjudicator for this dispute and ACAA failed to respond to Olive Group's request that the parties to the Contract agree on another independent body to assign an Adjudicator.

16. Due to ACAA's lack of cooperation, Olive Group was forced to move on to the second step of the dispute resolution process and initiate arbitration.

5

17. The ANAP Contract provided that disputes between Olive Group and ACAA shall be settled by arbitration:

> *8.2.4 GCC  "The arbitration shall be conducted in accordance with the arbitration procedure published by the institution named and in the place **shown in the SCC**."* (Emphasis in original).
>
> *8.2.4. SCC  "Disputes shall be settled by arbitration in accordance with the following provisions . . . ."*

18. Clause 8.2.5 of SCC provided in pertinent part:

> *"<u>Rules of Procedure</u>.  Except as stated herein, arbitration proceedings shall be conducted in accordance with the rules of procedure for arbitration of the United Nations Commission on International Trade Law (UNCITRAL) as in force on the date of this Contract."*

19. Clause 8.2.5, subpart 5, of SCC provided, in pertinent part, that in any arbitration:

> *"(a)  proceedings shall, unless otherwise agreed by the Parties, be held in Dubai, UAE.*
>
> *(b)  The law governing the Contract shall be the laws of Afghanistan.*
>
> *(c)  the English language shall be the official language for all purposes."*

**Procedural History of the Arbitration Proceedings**

20. As noted above, a dispute arose as to ACAA's multiple breaches of the ANAP Contract and other violations of the applicable laws and regulations.

21. Although Olive Group provided written notice to ACAA of its dispute and made reasonable efforts in good faith to resolve the dispute amicably, ACAA failed to negotiate in good faith with Olive Group to resolve such dispute.

22. On April 12, 2021, Olive Group commenced an arbitration proceeding by way of a Notice of Arbitration, in accordance with the ANAP Contract and pursuant to Clause 8.2 of the GCC and SCC of the ANAP Contract.  In its Notice of Arbitration, Olive Group appointed an arbitrator (Mr. Phillip Punwar) pursuant to Clause 8.2.4 of the SCC.  *See* Ex. 1 at ¶14.

23. On May 17, 2021, in light of the Respondent's failure to appoint a second arbitrator within 30 days thereafter, Olive Group wrote to the Secretary-General of the Permanent Court of Arbitration ("**PCA**"), requesting that he act as appointing authority for the appointment of a sole arbitrator pursuant to Clause 8.2.5 of the SCC and the Arbitration Rules of the United Nations Commission on International Trade Law, 2010 ("**UNCITRAL Rules**"). *See* Ex. 1 at ¶15.

24. On August 30, 2021, the PCA Secretary-General appointed Mr. Victor P. Leginsky, a national of Canada, located in Dubai, United Arab Emirates, as the Sole Arbitrator in the Arbitration pursuant to Article 8(2) of the UNCITRAL Rules (the "**Sole Arbitrator**"). *See* Ex. 1 at ¶22.

25. On September 29, 2021, the Sole Arbitrator held the First Procedural Meeting via videoconference, at which various initial procedural steps in the arbitration were discussed. On that same date, the Sole Arbitrator issued his Terms of Appointment in the form of Procedural Order No. 1, pursuant to which he confirmed his independence and impartiality *vis-à-vis* the Parties. The Sole Arbitrator also confirmed that the applicable rules in the arbitration were the UNCITRAL Rules, that the governing law in the case was the law of Afghanistan, that the language of the arbitration was English, and that the place of the arbitration was to be Dubai, United Arab Emirates. *See* Ex. 1 at ¶¶32-33.

26. On September 29, 2021, the Sole Arbitrator issued Procedural Order No. 2 which outlined, *inter alia*, the procedural calendar for the arbitration, the manner in which the Parties' written submissions should be presented, a schedule for document production, and the rules governing the submission of evidence and legal authorities. *Id.* at ¶34.

27. On October 28, 2021, Olive Group filed its Statement of Claim, to which it appended numerous exhibits (Exhibits C-1 to C-88) and legal authorities (CLA-1 to CLA-19), as well as a witness statement (CWS-1). *Id.* at ¶38.

28. At every step of the arbitration proceedings, the Sole Arbitrator sent written correspondence to both Olive Group and ACAA. The full procedural history of the arbitration is detailed in the Final Award. *See* Exhibit 1 to Qasimi Affidavit. at pp. 11-36.

29. On April 19, 2022, the Sole Arbitrator noted that the merits hearing was due to be held between May 23 and 26, 2022. On April 21, 2022, the Sole Arbitrator stated that, subject to the parties' views, he envisaged convening a one-day hearing by videoconference. The Sole Arbitrator suggested that such a hearing would provide him an opportunity to pose questions to counsel or to hear from witnesses, if called.

30. ACAA failed to appear or respond to any of the written correspondence from the Sole Arbitrator for many months. It was not until April 28, 2022 (a few weeks before the merits hearing) that the Sole Arbitrator received an email from Captain Ghulam Jailani Wafa, "Deputy Minister ACAA," sent on behalf of the Ministry of Transport and Aviation of Afghanistan. This Deputy Minister of ACAA apologized for ACAA's hitherto non-participation in the arbitration, which he attributed to the change of regime in Afghanistan and associated interruptions to institutions of the government. Specifically, he noted that the ACAA had been collapsed into the Ministry of Transport, resulting in the formation of the Ministry of Transport and Aviation of Afghanistan. ACAA requested a time extension so that it could present its arguments to the Sole Arbitrator. *See* Ex. 1 at ¶69.

31. ACAA was given numerous extensions of time to secure external legal counsel and present its arguments to the Sole Arbitrator.[1]

32. By email dated June 28, 2022, the Sole Arbitrator indicated that he would pose various substantive questions to ACAA in the course of the following week, and therefore expected ACAA to have obtained relevant authority to respond to such questions by that point. *See* Ex. 1 at ¶95.

33. On July 10, 2022, the Sole Arbitrator posed a number of questions to ACAA, in order for it to have an opportunity to present its case on substantive questions raised in the Arbitration. *Id.* at ¶96.

34. On July 18, 2022, ACAA provided its answers to the Sole Arbitrator's questions. On that same date, the Sole Arbitrator acknowledged receipt of ACAA's answers to the questions of July 10, 2022 and stated that he intended to take them as ACAA's position. *Id.* at ¶¶97-99.

35. On July 19, 2022, the Sole Arbitrator requested from ACAA any documentary evidence that supported its answers of July 18, 2022.

36. By email dated August 2, 2022, ACAA further explained its position on various issues, expanding on its answers to the Sole Arbitrator's questions of July 18, 2022, and filing exhibits. Respondent was represented by in-house legal advisor, Mr. Muhib-Ullah Zahid. *Id.* at ¶¶101-02.

37. After numerous extensions granted to Respondent over the course of many months, the Sole Arbitrator, on February 28, 2023, invited the parties to indicate their respective availability on either March 15 or 16, 2023 to conduct the merits hearing (the "**Hearing**").

---

[1] There is a lengthy procedural history in the Arbitration which is detailed in the Final Award at ¶¶ 11-200. *See* Exhibit 1 at pp. 11-36.

9

38. Ultimately, on March 13, 2023, the Sole Arbitrator confirmed that the Hearing would commence at 4:00 p.m. (UTC+4) on March 16, 2023.

39. On March 14, 2023, the Sole Arbitrator issued Procedural Order No. 5, setting out a protocol for the Hearing. *See* Ex. 1 at ¶150.

40. On March 16, 2023, the Hearing was held by video conference using the Zoom platform. *Id.* at ¶155. Claimant's two witnesses were sworn to an oath prior to them giving their evidence. *Id.* at ¶156.

41. After various post-hearing matters were addressed, on August 13, 2023, the Sole Arbitrator noted that, in light of the Parties' failure to agree on the time for the issuance of the final award under the UAE Arbitration Law, the courts of the UAE would determine the timeframe within which the final award should be issued. *Id.* at ¶196.

42. On September 28, 2023, the Dubai Courts Court of Appeals (Fifth Commercial Appeals Circuit) set the deadline for the issuance of the final award to November 30, 2023. *Id.* at ¶197.

43. On November 14, 2023, the Sole Arbitrator issued Procedural Order No. 6 confirming the order of the Dubai Courts in setting the date for the issuance of the final award to November 30, 2023, and closed the proceedings. *Id.* at ¶ 198.

44. The Sole Arbitrator rendered his Final Award on November 28, 2023, in Dubai, United Arab Emirates. *See* Ex. 1 to Qasimi Affidavit.

45. The Final Award, which is binding on the parties, was delivered to the parties on November 28, 2023 in accordance with the UNCITRAL Rules.

46. As noted in the Final Award, the Sole Arbitrator ruled in favor of Olive Group and against ACAA. Specifically, the Sole Arbitrator declared and ordered as follows:

i.  The Afghanistan Civil Aviation Authority, Government of Islamic Republic of Afghanistan, Respondent, shall pay to Olive Group FZ-LLC, Claimant, the sum of USD 1,280,967.55, monies wrongfully withheld from the Claimant as penalties.

ii.  The Afghanistan Civil Aviation Authority, Government of Islamic Republic of Afghanistan, Respondent, shall pay to Olive Group FZ-LLC, Claimant, the sum of USD 99,916.55 as interest on the monies wrongfully withheld as penalties, due as at 31 May 2022.

iii.  The Afghanistan Civil Aviation Authority, Government of Islamic Republic of Afghanistan, Respondent, shall pay to Olive Group FZ-LLC, Claimant, the sum of USD 57,380.34 as simple interest on USD 1,280,967.55, the monies wrongfully withheld as penalties, from 1 June 2022 to the date of this final award, 28 November 2023.

iv.  The Afghanistan Civil Aviation Authority, Government of Islamic Republic of Afghanistan, Respondent, shall pay to Olive Group FZ-LLC, Claimant, the sum of USD 2,755,635.74, monies wrongfully withheld from the Claimant as retention.

v.  The Afghanistan Civil Aviation Authority, Government of Islamic Republic of Afghanistan, Respondent, shall pay to Olive Group FZ-LLC, Claimant, the sum of USD 225,358.12 as simple interest on the amount owing, USD 2,755,635.74, at the rate of 3% per annum from 8 March 2021 to the date of this final award, 28 November 2023.

vi.  The Afghanistan Civil Aviation Authority, Government of Islamic Republic of Afghanistan, Respondent, shall pay to Olive Group FZ-LLC, Claimant, the sum of USD 67,854.98 as interest calculated at a rate of 3% per annum simple interest due to the Respondent's delay in repaying the Performance Guarantee to the Claimant.

vii.  The Afghanistan Civil Aviation Authority, Government of Islamic Republic of Afghanistan, Respondent, shall pay to Olive Group FZ-LLC, Claimant, the sum of USD 9,185,452.47, being the amount that the Claimant is owed under the ANAP Contract for the unpaid nine-month final portion thereof.

viii.  The Afghanistan Civil Aviation Authority, Government of Islamic Republic of Afghanistan, Respondent, shall pay to Olive Group FZ-LLC, Claimant, the sum of USD 280,243.08 as interest on USD 9,185,452.47, the unpaid nine-month final portion of the ANAP Contract, due as at 31 May 2022.

> ix. The Afghanistan Civil Aviation Authority, Government of Islamic Republic of Afghanistan, Respondent, shall pay to Olive Group FZ-LLC, Claimant, the sum of USD 411,457.94 as simple interest on USD 9,185,452.47, the unpaid nine-month final portion of the ANAP Contract, from 1 June 2022 to the date of this final award, 28 November 2023.
>
> x. The Afghanistan Civil Aviation Authority, Government of Islamic Republic of Afghanistan, Respondent, shall bear the arbitration costs in the sum of AED 436,875 (Article 40(2)(a)-(c) of the UNCITRAL Rules), as fixed in this final award, and, thus shall pay to Olive Group FZ-LLC, Claimant, the sum of AED 291,250, corresponding to the portion of these costs borne from the Claimant's share of the deposits paid by it to the PCA.
>
> xi. The Afghanistan Civil Aviation Authority, Government of Islamic Republic of Afghanistan, Respondent, shall pay to Olive Group FZ-LLC, Claimant, the amounts of USD 747,392.71, AED 337,040.50 and EUR 3,000 as the Claimant's legal and other costs under Article 40(2)(e) of the UNCITRAL Rules.
>
> xii. The Afghanistan Civil Aviation Authority, Government of Islamic Republic of Afghanistan, Respondent, shall pay to Olive Group FZ-LLC, Claimant, simple interest at the rate of 3% per annum on all of the amounts as ordered to be paid at paragraphs 446(i), 446(ii), 446(iii), 446(iv), 446(v), 446(vi), 446(vii), 446(viii), 446(ix), 446(x) and 446(xi) from 28 December 2023 until full payment is made, as post-award interest.

47. Thus, in total, ACAA was ordered to pay Olive Group the sum of **USD 15,286,002.30**, not including post-award interest. This sum represents USD 15,111,659.50, plus USD 171,079.73 (AED 628,290.50), plus USD 3,263.05 (EUR 3,000).[2]

48. Post-award interest on USD 15,286,002.30 at the rate of 3% per annum equals USD 458,580.06 per annum; or USD 1,256.38 per diem.

49. For the period December 28, 2023 through July 31, 2024, post-award interest has accrued in the amount of **USD 272,634.46.** For each day after July 31, 2024, post-award interest continues to accrue at USD 1,256.38.

---

[2] Based on currency conversion rates as of May 15, 2024, 1 AED equals 0.2723 USD; and 1 EUR equals 1.0877 USD.

50. As of the date of this Petition, Respondent has failed to comply with the Final Award. Respondent has not paid Olive Group any portion of the Final Award.

51. The Final Award has not been set aside or suspended by a competent authority of the country in which, or under the law of which, the Final Award was made.

52. Pursuant to 9 U.S.C. § 207, Petitioner has brought this action within three (3) years after the Final Award was made on November 28, 2023.

53. No grounds exist for this Court to refuse recognition and enforcement of the Final Award.

## **COUNT ONE**

54. Petitioner repeats and realleges paragraphs 1 through 53 hereof as if fully set forth herein.

55. The Federal Arbitration Act provides that the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

56. None of the grounds available for refusal or deferral of recognition or enforcement of an award specified in the New York Convention are applicable to the Final Award.

57. Therefore, pursuant to 9 U.S.C. § 207, Petitioner requests that this Court recognize and enforce the Final Award and enter judgment in favor of Petitioner and against Respondent in the amount of the Final Award.

58. Under the terms of the Final Award, Petitioner is entitled to interest at the rate of 3% per annum on the amount of the awarded sum (USD 15,286,002.30), running from December 28, 2023 until the date of full payment of the awarded sums.

59. By reason of the foregoing, this Court should issue an order recognizing and enforcing the Final Award and direct that judgment be entered thereon.

WHEREFORE, Petitioner, Olive Group FZ-LLC, respectfully requests that this Court issue an Order:

a. Recognizing and enforcing the Final Award, pursuant to 9 U.S.C. § 207 and Article III of the New York Convention; and

b. Entering Judgment in favor of Petitioner Olive Group FZ-LLC and against Respondent Afghanistan Civil Aviation Authority, Government of Islamic Republic of Afghanistan in the amount of Fifteen Million Two Hundred Eighty Six Thousand Two U.S. Dollars and Thirty Cents (**USD 15,286,002.30**), plus post-award interest in the amount of Two Hundred Seventy Two Thousand Six Hundred Thirty Four Dollars and Forty Six Cents (**USD 272,634.46**) for the period December 28, 2023 through July 31, 2024, plus post-award interest at the rate of 3% per annum after July 31, 2024.

c. Awarding Olive Group its costs and expenses, including reasonable attorneys' fees, incurred in recognizing and enforcing the Final Award; and

d. Any other relief that this Court, in the interests of justice, deems just and proper.

Date: July 23, 2024

*/s/ Enayat Qasimi*
Enayat Qasimi (D.C. Bar No. 987877)
Whiteford, Taylor & Preston L.L.P.
1800 M Street, N.W., Suite 450N
Washington, D.C. 20036
Telephone: (202) 659-6792
Email: eqasimi@whitefordlaw.com

*/s/ Ilana Subar*
Ilana Subar (D.C. Bar No. MD25181)
Whiteford, Taylor & Preston L.L.P.
7 Saint Paul Street, Suite 1500
Baltimore, MD 21202
Telephone: (410) 347-9419
Email: isubar@whitefordlaw.com

*Counsel for Petitioner, Olive Group FZ-LLC*

*13561748.3*