IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OLIVE GROUP FZ-LLC, )<br>)<br>*Petitioner*, )<br>)<br>v. )<br>)<br>AFGHANISTAN CIVIL AVIATION )<br>AUTHORITY, GOVERNMENT OF )<br>ISLAMIC REPUBLIC OF )<br>AFGHANISTAN )<br>)<br>*Respondent*. | Case No. 1:24-cv-2170 |

**PETITIONER'S MOTION FOR ALTERNATIVE SERVICE
PURSUANT TO 28 U.S.C. § 1608
AND STATEMENT OF POINTS AND AUTHORITIES**

Petitioner, Olive Group FZ-LLC ("Olive Group" or "Petitioner"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 4(j) and 28 U.S.C. § 1608(b), hereby moves for alternative service upon Respondent, Afghanistan Civil Aviation Authority ("ACAA" or "Respondent"), and in support states as follows:

**Introduction**

Petitioner and Respondent were engaged in a foreign arbitration proceeding, resulting in a final award issued on November 28, 2023 (the "Final Award') in favor of Petitioner. Petitioner has timely instituted this action to petition this Court to recognize and enforce the Final Award. By its Motion, Petitioner seeks authorization for alternative service on Respondent, an agency of the Government of Afghanistan, in light of the security challenges in Afghanistan and the impossibility in perfecting service pursuant to the Foreign Sovereign Immunities Act (the "FSIA") -- specifically 28 U.S.C. § 1608(b)(1), (b)(2), (b)(3)(A), and (b)(3)(B). As detailed further below, 28 U.S.C. § 1608(b)(3)(C) contemplates service "as directed by order of the court . . .", "if reasonably calculated to give actual notice", where service cannot be made under § 1608(b)(1) or

1

(b)(2). Petitioner proposes alternative service on Respondent through a combination of (i) email, and (ii) express delivery (DHL), as further detailed below.

For the reasons explained below, Petitioner's Motion for Alternative Service should be granted. What Petitioner is proposing to this Court for alternative service would result in sufficient service upon Respondent pursuant to the FSIA and would be reasonably calculated to give actual notice to Respondent.

## Argument

**A.    Service of Process Upon Agencies and Instrumentalities of a Foreign State Under 28 U.S.C. § 1608.**

Respondent is an agency of the Government of Afghanistan. *See* Final Award at ¶3; *see also* 28 U.S.C. § 1603(b). A true and correct copy of the Final Award dated November 28, 2023 is attached hereto as **Exhibit 1**. Therefore, service of process involving Respondent is governed by 28 U.S.C. § 1608(b). Section 1608(b) is part of the FSIA.

Federal Rule of Civil Procedure 4(j) provides that "[a] foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608." Service of process upon a foreign state's agencies or instrumentalities is governed by 28 U.S.C. § 1608(b), which also provides a "hierarchy" of the methods of service in descending order of preference. *See Estate of Hartwick v. Islamic Republic of Iran*, 2021 WL 6805391 (D.D.C. Oct. 1, 2021) (detailing the "hierarchical regime" set forth in § 1608(b) and finding that Plaintiffs had properly effectuated service on agencies or instrumentalities of Iran and in a manner that was reasonably calculated to provide notice of the action).

The first available method is provided in § 1608(b)(1) and states that service may be effected "by delivery of a copy of the summons and complaint in accordance with any special

arrangement for service between the plaintiff and the agency or instrumentality." 28 U.S.C. § 1608(b)(1).

However, if no "special arrangement" exists, the second sequential method is to serve "by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(b)(2). In many instances, service under this section is conducted according to the terms of a specific international treaty, such as the *Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*.

If the first and second methods fail or are unavailable, service can be made "if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or (C) as directed by order of the court consistent with the law of the place where service is to be made." 28 U.S.C. § 1608(b)(3)(A)-(C).

"The service requirements of § 1608(b) are less stringent than those of § 1608(a) (service on the foreign state itself and its political subdivisions), and can be satisfied by 'technically faulty service' as long as the defendants receive adequate notice of the suit and are not prejudiced." *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 102 (D.D.C. 2005) (citations omitted).

B.  **Petitioner Should be Permitted to Serve ACAA Pursuant to 28 U.S.C. § 1608(b)(3)(C) Because No Other Method of Service Provided in the Statutory Hierarchy is Sequentially Available or Feasible.**

This Court should allow alternative service in the manner detailed below, as this is the only step in the statutory hierarchy that is available to Petitioner.

First, no special arrangement for service exists between Petitioner and Respondent. The contract that was the subject of the arbitration (the "ANAP Contract")[1] does not contain any provision addressing service of process in this instance. *See* ANAP Contract, a copy of which is attached as Exhibit 2 to the Affidavit of Enayat Qasimi, submitted in support of the Petition to Recognize and Enforce Foreign Arbitration Award (the "Petition").

Second, Respondent has no officers or agents authorized to receive service of process in the United States.

Third, there exists no applicable international convention between the United States and Afghanistan that provides a specific method of service of process for judicial documents. Afghanistan is not a party to the *Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*.[2]

Fourth, Afghanistan has no certified mail services or recognized government that could aid in the execution of letters rogatory. According to the U.S. Postal Service's website, recorded

---

[1]  Respondent had been contracting out aviation security services to international companies via international tenders, so as to meet the standards recommended by the International Civil Aviation Organization. On or about December 30, 2017, Petitioner submitted its bid for the procurement of the Afghanistan National Airports Project ("ANAP") and on August 4, 2018, the parties entered into the ANAP Contract. According to the ANAP Contract, Petitioner was to provide aviation security-related services in support of the Respondent's aviation operations, including passenger and cargo checks and screening, management and training of local aviation security personnel and maintenance of the Respondent's aviation security equipment at Afghanistan's four international airports. *See* Ex. 1 (Final Award) at ¶¶ 201-03.

[2]  *See, e.g.*, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Afghanistan.html

delivery, which is the international service equivalent of domestic certified mail, is not available for Afghanistan.[3] The Afghanistan government is currently under Taliban control. Specifically, the Haqqani Network[4], which is recognized by the United States as an international terrorist organization, controls the Ministry of Transport & Aviation. Afghanistan remains under the rule of the Taliban and the country faces an evolving and dangerous security situation. In 2022, the United Nations passed a resolution condemning the Taliban government and urging non-recognition, with a recorded vote of 116 in favor to 0 against.[5]

In short, service as directed by court order is the only viable option under the circumstances here.

Since service of process under § 1608(b)(1), (b)(2), (b)(3)(A), or (b)(3)(B) is unavailable or futile, this Court should order alternative service as contemplated by 28 U.S.C. § 1608(b)(3)(C). Alternative methods of service are permissible in these situations. Federal courts have addressed the permissibility of alternative methods of service on entities in Afghanistan, specifically the Taliban and agencies or instrumentalities of the foreign state. *See, e.g., In re Terrorist Attacks on September 11*, 2022 WL 1088567 (S.D.N.Y. Apr. 4, 2022); *Smith v. Islamic Emirate of*

---

[3] "Recorded delivery is the international service equivalent of domestic certified mail. It provides the mailer with a numbered mailing receipt and affords the opportunity to obtain confirmation of delivery through the purchase of a separate return receipt for an additional fee." "The originating Post Office facility does not maintain a mailing record for recorded delivery service items. However, the destination post office is required to retain a record of delivery for each recorded delivery service item that is tendered to an addressee."
https://pe.usps.com/IMM_Archive/HTML/IMM_Archive_20060108/imm/immicl/immiclab_001.html.

[4] The Haqqani Network is a Taliban-related entity designated by the U.S. Government as a "Foreign Terrorist Organization." *See* https://www.dni.gov/nctc/groups/haqqani_network.html; https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/afghanistan-advisory.html ("Do not travel to Afghanistan due to civil unrest, armed conflict, crime, terrorism, [and] kidnapping").

[5] *See* U.N. press release dated 11/10/2022, *General Assembly Voices Deep Concern Over Volatility in Afghanistan since Taliban Takeover, Unflinching Commitment to Afghans, Adopting Resolution by Vote*, available at: https://press.un.org/en/2022/ga12469.doc.htm.

5

*Afghanistan*, 262 F. Supp. 2d 217, 220 n.2 (S.D.N.Y. 2003).[6] Alternative service by email, publication and/or social media has been authorized. *See id.* This Court has also addressed the permissibility of alternative methods of service on agencies or instrumentalities of a foreign state. *See, e.g., Estate of Hartwick v. Islamic Republic of Iran*, 2021 WL 6805391 (D.D.C. Oct. 1, 2021) (finding that Plaintiffs had properly effectuated service on agencies or instrumentalities of Iran and in a manner that was reasonably calculated to provide notice of the action).

Service on an agency or instrumentality of a foreign state under § 1608(b)(3)(C) has occurred where there has been a breakdown in a country's services. For example, in *Janvey v. Libyan Inv. Auth.*, the court authorized service on Libyan government instrumentalities where "[t]he ongoing strife in Libya apparently has rendered communicating with the Libyan Defendants and other Libyan authorities via mail or courier impossible." 2011 WL 13299660, at *6 (N.D. Tex. June 16, 2011). Similarly, in *Harris Corp. v. Nat'l Iranian Radio & Television*, the Court of Appeals for the Eleventh Circuit accepted service on Iranian instrumentalities using a combination of Telex, registered mail, and delivery of papers to the instrumentalities' law firm. 691 F.2d 1344, 1352 n.15 (11th Cir. 1982). Here, Afghanistan has experienced and continues to experience a breakdown in the country's security and services. This Court is thus left to order a suitable means "reasonably calculated to give actual notice."

Here, Petitioner seeks authorization for alternative service on ACAA in light of the security challenges in Afghanistan and the unavailability or impossibility in perfecting service pursuant to

---

[6] Service on the Taliban was permitted by publication in the *International Herald Tribune*, *USA Today*, and an Arabic language newspaper circulated in the Middle East, supplemented by a posting on a website. *See In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 1088567 *3 (citing *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570 (GBD) (SN) (Dec. 10, 2003), ECF No. 445).

28 U.S.C. § 1608(b)(1), (b)(2), (b)(3)(A), and (b)(3)(B). Court-ordered service on ACAA remains the only viable and realistic mechanism under § 1608(b)(3)(C).

Petitioner proposes alternative service on Respondent through a combination of email to several of Respondent's representatives, email to a general purpose email address listed on the website of Afghanistan's Ministry of Transport & Aviation, and express mail delivery (DHL) to Respondent's office located in Kabul, Afghanistan, as further detailed below:

First, Petitioner proposes to serve Respondent by email to three of its representatives: (1) Captain Ghulam Jailani Wafa, "Deputy Minister ACAA" (jailaniw63@gmail.com), (2) Mr. Muhib-Ullah Zahid, "Legal Advisor, Ministry of Transport and Aviation" (mzahid.afg@gmail.com), and (3) Mr. Farhad Perzad (farhad.perzad@acc.gov.af and farhad_przd@yahoo.com). These three individuals represented Respondent in the arbitration against Petitioner. *See* Final Award at ¶¶ 4, 69.

Courts have permitted the use of email (and social media) as an alternative means of service. *See, e.g., In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 1088567 *3. In the case of email, a party may be expected to show that the target for service is likely to receive the communication. *Id.* Here, given Respondent's receipt of numerous emails through the above-noted representatives in the arbitration, it is highly likely that Respondent will receive the Petition Papers via email as outlined above. Mr. Muhib-Ullah Zahid (mzahid.afg@gmail.com) received and sent <u>dozens</u> of emails to the arbitrator, Respondent's other representatives, and Petitioner's counsel during the arbitration proceedings.[7] True and correct copies of some of the emails sent and received by Mr. Muhib-Ullah Zahid are attached hereto as **Exhibits 2A through 2H**. Also, Captain Ghulam Jailani Wafa, "Deputy Minister ACAA", sent at least one email to the arbitrator

---

[7] *See, e.g.,* Ex. 1 (Final Award) at ¶¶ 70-133, 137-154, 157-200.

7

(*see* Final Award at ¶69) and was copied on most, if not all, of the emails sent by Mr. Muhib-Ullah Zahid in the arbitration proceeding. A true and correct copy of the email sent by Captain Ghulam Jailani Wafa ("Ghulam Jailani") dated 4/28/2022 to the arbitrator (copying Mr. Muhib-Ullah Zahid and Mr. Farhad Perzad) is attached hereto as **Exhibit 3**. *See also* Ex. 2A-2H (showing Ghulam Jailani copied on emails during the course of the arbitration). Also, Petitioner, through its counsel, copied Mr. Farhad Perzad on all of its email correspondence to the arbitrator and received email confirmations from Microsoft Outlook that indicated said emails were successfully delivered. A true and correct copy of some of the email confirmations received by Plaintiff's counsel from Microsoft Outlook are collectively attached hereto as **Exhibit 4**. There is sufficient evidence that email is reasonably calculated to reach one or more of Respondent's representatives.

Second, Petitioner proposes to serve Respondent by email to info@mot.gov.af, a general purpose email address listed on the website of Afghanistan's Ministry of Transport & Aviation, https://mot.gov.af/en. According to Respondent, ACAA was merged into the Ministry of Transport of Afghanistan and, as a result, it now operates under the umbrella of Afghanistan's Ministry of Transport & Aviation. *See* Ex. 1 (Final Award) at p. 8, n.1 and p. 19, ¶69.

Third, Petitioner proposes to send via express mail (such as DHL) a copy of the Petition, along with the supporting Affidavit with exhibits, and Summons (collectively the "Petition Papers") to Respondent at the official address for the Ministry of Transport & Aviation, 01 RTA Road, Ansari Watt, Kabul Afghanistan. *See, e.g.,* Ex. 2B through 2H (showing signature block listing the official address for the Ministry of Transport & Aviation as 01 RTA Road, Ansari Watt, Kabul, Afghanistan). It appears that DHL delivers to Afghanistan.

In sum, Petitioner believes that the above-described alternative service would be reasonably calculated to give actual notice to Respondent.[8]

**C.      Translation of the Petition Papers Is Not Warranted Under the Circumstances.**

Per § 1608(b)(3), notice shall be accompanied by a translation of the relevant documents "into the official language of the foreign state . . . ." § 1608(b)(3). Here, however, the parties contractually agreed that "the English language shall be the official language for all purposes." *See* ANAP Contract at p. 8, Special Conditions of Contract ("SCC") § 8.2.5, attached as Exhibit 2 to the Qasimi Affidavit. The parties also contractually agreed that "the decision of the sole arbitrator . . . shall be final and binding and shall be enforceable in any court of competent jurisdiction, and the Parties hereby waive any objections to or claims of immunity in respect of such enforcement." *See id.* at pp. 8-9, SCC § 8.2.5. Therefore, given that Respondent contractually agreed that English shall be the official language for all purposes, Respondent would not be unfairly prejudiced if it were to receive the Petition Papers in the English language.

In the alternative, if this Court is inclined to require translation, then, at most, only a <u>summary</u> of the Petition itself should be translated into Dari (one of the two most prominent languages in Afghanistan). Most of the Petition cites directly to the Final Award, which Respondent already has a copy of in its possession. Also, the two exhibits attached to the Affidavit

---

[8] In the event that this Court were to find that an additional method of service would be desirable, Petitioner notes that there is the possibility of (a) express delivery (via DHL) of the Petition Papers to the Afghan Consulate in Dubai, United Arab Emirates; or (b) publication with a leading online Afghanistani newspaper. There are two leading online Afghanistani newspapers: Etilaatroz and 8AM Media. As noted above, courts have permitted service by publication on the Taliban. *See In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 1088567 *3 (citing *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570 (GBD) (SN) (Dec. 10, 2003) ECF No. 445); *see also Smith v. Islamic Emirate of Afghanistan*, 2001 WL 1658211, at *3 (S.D.N.Y. Dec. 26, 2001); *Mwani v. bin Laden*, 417 F.3d 1, 5 (D.C. Cir. 2005).

Given the substantial cost to publish the Petition Papers in one of the above-noted online newspapers, if this Court were to require publication, Petitioner proposes including an electronic address, such as a URL in the online newspaper that directs the reader to an easily accessible online version of the Petition Papers. The published online notice would include a brief summary of the nature of the action and the relief sought.

in support of the Petition are documents that the Respondent already has in its possession. Exhibit 1 to the Affidavit is the Final Award issued by the arbitrator in the foreign arbitration proceeding and emailed to both parties. Exhibit 2 to the Affidavit is the ANAP Contract, which was the parties' contract that was the subject of the arbitration. Both exhibits are in the English language, consistent with the parties' agreement and understanding. *See* ANAP Contract at pp. 8-9, SCC § 8.2.5. Moreover, both exhibits are lengthy: the Final Award is 108 pages and the ANAP Contract is 68 pages. *See* Ex. 1 (Final Award) and Ex. 2 (ANAP Contract) to the Qasimi Affidavit, filed with the Petition.

## **Conclusion**

The purpose of the Federal Rules of Civil Procedure is set out in Rule 1, which states that "[t]he Federal Rules of Civil Procedure should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." If service of process is to comport with Rule 1, then Rule 4(j) should be administered in the most just, speedy, and inexpensive fashion. Here, service of process on Respondent through a combination of (i) email to Respondent's representatives, (ii) email to a general purpose email address listed on the website of Afghanistan's Ministry of Transport & Aviation, and (iii) express mail delivery (DHL) to Respondent's office located in Kabul, Afghanistan, would be most just, speedy, and cost effective under the circumstances. Importantly, the manner of service proposed by Petitioner would be reasonably calculated to reach Respondent and notify it of the pending action seeking recognition and enforcement of the Final Award issued by the arbitrator in the foreign arbitration.

For all of the foregoing reasons, Petitioner respectfully requests that this Court enter an Order granting its Motion and permitting it to serve the Petition Papers in English on Respondent,

an agency of the Government of Afghanistan, via email and express mail delivery (DHL) as described above. A proposed Order is attached.

Date: July 24, 2024                                                  Respectfully submitted,

*/s/ Enayat Qasimi*
Enayat Qasimi (D.C. Bar No. 987877)
Whiteford, Taylor & Preston L.L.P.
1800 M Street, N.W., Suite 450N
Washington, D.C. 20036
Telephone: (202) 659-6792
Email: eqasimi@whitefordlaw.com

*/s/ Ilana Subar*
Ilana Subar (D.C. Bar No. MD25181)
Whiteford, Taylor & Preston L.L.P.
7 Saint Paul Street, Suite 1500
Baltimore, MD 21202
Telephone: (410) 347-9419
Email: isubar@whitefordlaw.com

*Counsel for Petitioner, Olive Group FZ-LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing is being served on July 24, 2024 via the Court's electronic filing system on all counsel of record.

                                                            */s/ Ilana Subar*

*13598555*