# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

OLIVE GROUP FZ-LLC,

    *Plaintiff*,

v.

AFGHANISTAN CIVIL AVIATION AUTHORITY,

    *Defendant*.

Civil Action No. 24-2170 (SLS)

Judge Sparkle L. Sooknanan

## MEMORANDUM OPINION

This case arises from a contract to provide aviation-related security services in Afghanistan. The Plaintiff, the Olive Group FZ-LLC (Olive Group), is a Dubai-based company that contracted with the Afghanistan Civil Aviation Authority (ACAA) to provide security services at four airports in Afghanistan. The Olive Group commenced arbitration proceedings in 2021 alleging breach of contract, and an arbitrator issued an award in its favor in 2023. The Olive Group then brought this action to enforce the arbitration award against the ACAA. When the ACCA failed to answer, the Clerk of Court entered default. Before the Court is the Olive Group's Motion for Default Judgment. For the reasons explained below, the Court grants the motion.

## BACKGROUND

### A.   Factual Background

The Court draws the facts, accepted as true, from the Plaintiff's "pleadings, motion for default judgment, and various attachments." *Omni Bridgeway Ltd. v. Ministry of Infrastructure & Energy of the Republic of Albania*, No. 23-cv-1938, 2025 WL 506570, at *1 (D.D.C. Feb. 14, 2025).

The Olive Group is a "Dubai free-zone limited liability company" with "extensive experience and expertise in different security fields, particularly in airport and aviation security." Petition to Confirm Arbitration Award (Pet.) ¶ 2, ECF No. 1. It "has supported and provided aviation security related services to clients in various countries in the emerging and frontier markets, including Afghanistan, Iraq, and Yemen." *Id.* And it "is an indirect wholly owned subsidiary of Constellis Holdings, LLC, a limited liability company organized under the laws of the State of Delaware." *Id.* In 2018, the Olive Group entered into a contract with the ACAA, an agency of the Government of Afghanistan, to "procure security services for four international airports in Afghanistan." *Id.* ¶¶ 3, 8; *see also* Arbitration Award ¶ 5, ECF No. 1-2. The ACAA "was in charge of management and regulation of air transportation, management of airspace and management and operation of airports in Afghanistan." Pet. ¶ 3.

According to the Olive Group, the ACAA breached the contract on several occasions, which prompted the Olive Group to commence arbitration proceedings. *Id.* ¶¶ 8–10. Arbitration proceedings occurred in Dubai, United Arab Emirates, and after extensive proceedings involving the ACAA, *see id.* ¶¶ 22–43, a final award was issued on November 28, 2023, in favor of the Olive Group, *see id.* ¶¶ 44, 46; *see also* Arbitration Award. The arbitrator ordered the ACAA to pay the Olive Group a total of $15,286,002.30, at a post-award interest rate of 3%, accruing from December 28, 2023, until full payment is made. *See id.* ¶¶ 46–48. As of the time of the filing of the instant motion, the ACAA had not paid the award. *See id.* ¶ 50.

**B.    Procedural Background**

The Olive Group filed this Petition on July 24, 2024, to recognize and enforce the arbitration award under the New York Convention, an international treaty that provides for recognition and enforcement of foreign arbitration awards, as codified in the Federal Arbitration

Act, 9 U.S.C. §§ 1 *et seq. See* Pet. ¶¶ 54–59. The ACAA was served on November 6, 2024, *see* Return of Service Aff., ECF No. 9, and it has failed to answer or otherwise respond to the Petition. On February 24, 2025, the Plaintiff requested that the Clerk of Court enter default. *See* Aff. for Default, ECF No. 13. The Clerk entered default two days later. *See* Clerk's Entry of Default, ECF No. 14. The Plaintiff then filed a Motion for Default Judgment on March 28, 2025, requesting that the Court order payment of $15,286,002.30, at an interest rate of 3% per year accruing on December 28, 2023, up until the date of payment. *See* Mot. Default Judgment at 2–3, ECF No. 15.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides for "default judgments, which safeguard plaintiffs when the adversary process has been halted because of an essentially unresponsive party." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (cleaned up). But an entry of default judgment is not automatic, and it is not a decision that courts make lightly. *See Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980) (observing that "[d]efault judgments are not favored by modern courts, perhaps because it seems inherently unfair to use the court's power to enter and enforce judgments as a penalty for delays in filing").

Where a plaintiff seeks default judgment in a case implicating the Foreign Sovereign Immunities Act, the plaintiff must "establish[ ] . . . [its] right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). This "imposes a duty on [the] court[ ] to not simply accept a complaint's unsupported allegations as true, and obligates courts to inquire further before entering judgment[.]" *Firebird Glob. Master Fund II Ltd. v. Republic of Nauru*, 915 F. Supp. 2d 124, 126 (D.D.C. 2013) (internal quotation marks omitted). "A court retains its affirmative obligation" to ensure it has subject-matter jurisdiction and personal jurisdiction over the defaulting sovereign nation. *Compagnie Sahélienne d'Entreprise v. Republic of Guinea*, No. 20-cv-1536, 2021 WL 2417105, at *2 (D.D.C. June 14, 2021) (internal quotation marks omitted).

**DISCUSSION**

The Court is satisfied that it has subject-matter jurisdiction over the claims, that it has personal jurisdiction over the parties, and that the Olive Group has demonstrated an entitlement to relief. The Court therefore finds that default judgment is proper and confirms the arbitration award.

### A.   Rule 55 Requirements

A plaintiff seeking default judgment must: (1) request that the Clerk of the Court enter default based on the defendant's failure to respond and (2) file a motion for default judgment. *See Omni Bridgeway Ltd.*, 2025 WL 506570, at *3; *see also* Fed. R. Civ. P. 55. The Olive Group has completed both steps, *see* Aff. for Default; Clerk's Entry of Default, ECF No. 14; Mot. Default Judgment, ECF No. 15, so this threshold requirement is satisfied.

### B.   Jurisdiction

#### 1.   Subject Matter Jurisdiction

The Foreign Sovereign Immunities Act (FSIA) is the "sole basis for obtaining jurisdiction over a foreign state in federal court," *Samantar v. Yousuf*, 560 U.S. 305, 313–14 (2010) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989)), and it provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States" unless one of its exceptions applies, 28 U.S.C. § 1604. The Defendant in this case, the ACAA, is an agency of the Afghanistan Government responsible for the "management and regulation of air transportation." Pet. ¶ 3. It is therefore a foreign state, *see* 28 U.S.C. § 1603(a) (defining a "foreign state" to include a "political subdivision of a foreign state, or an agency or instrumentality of a foreign state as defined in [28 U.S.C. § 1603](b)"); *see also* 28 U.S.C. § 1603(b) (defining an "agency or instrumentality of a foreign state" to include corporations that are majority owned by the foreign state), that is "presumptively immune from the jurisdiction of United States courts," *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).

But under the FSIA's arbitration exception, a foreign state is not entitled to immunity from a suit to "confirm an award made pursuant to . . . an agreement to arbitrate" if the agreement or award is "governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards[.]" 28 U.S.C. § 1605(a)(6). A "district court must find three 'jurisdictional facts'" to proceed under the arbitration exception in the FSIA: "(1) an arbitration agreement, (2) an arbitration award, and (3) a treaty potentially governing award enforcement." *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100 (D.C. Cir. 2024). All three exist here.

The first two requirements are easily met. First, the Olive Group entered into a contract with the ACAA providing that "[d]isputes shall be settled by arbitration[.]" Contract Agreement at 7, ECF No. 1-3; *see also NextEra Energy Glob. Holdings B.V.*, 112 F.4th at 1100 ("FSIA requires 'an agreement made by the foreign state'—*either* 'with' *or* 'for the benefit' of a private party—to submit certain disputes to arbitration." (quoting 28 U.S.C. § 1605(a)(6)). Second, after arbitration proceedings in Dubai, United Arab Emirates, a final arbitration award totaling $15,286,002.30 was issued in favor of the Olive Group. *See* Pet. ¶¶ 44, 46; Arbitration Award; *see also VAMED Mgmt. und Serv. GMBH v. Gabonese Republic*, No. 22-cv-3737, 2024 WL 1092232, at *3 (D.D.C. Mar. 13, 2024) (noting that the plaintiff's submission of the arbitral award generally "demonstrate[s] the [second] jurisdictional fact[ ]," especially when the defaulting party "has not appeared in th[e] case" and therefore "does not dispute [the submission's] authenticity").

Turning to the third requirement, the Olive Group asserts that the New York Convention is the treaty that governs the arbitration award. *See* Pet. ¶ 1. The Court agrees. "[T]he New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception." *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 124–25 (D.C. Cir. 1999) (cleaned up). It

5

is a multilateral treaty providing for "the recognition and enforcement of arbitral awards" across international borders. New York Convention Art. I(1). Congress codified the Convention in the Federal Arbitration Act (FAA), which provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. And that provision of the FAA vests district courts with "original jurisdiction over such an action or proceeding." *Id.* Thus, arbitration awards governed by the New York Convention satisfy the FSIA's arbitration exception.

The arbitration award entered in the Plaintiff's favor is governed by the Convention. The Convention controls an action to enforce an arbitration award when "(1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope." *Compagnie Sahélienne d'Entreprise*, 2021 WL 2417105, at *2 (cleaned up); *Creighton Ltd.*, 181 F.3d at 123–24. All four requirements are met.

The contract for security services is in writing, and it provides that the parties may resolve disputes through arbitration in the United Arab Emirates, a signatory to the New York Convention. *See* Contract Agreement at 7 ("Disputes shall be settled by arbitration[.]"); *id.* at 8 (providing that "proceedings shall . . . be held in Dubai, UAE"); *see also* Contracting States, New York Arbitration Convention, https://perma.cc/S6WD-BJWS (showing the United Arab Emirates is a signatory to the New York Convention). Contracting to provide aviation-related security services is commercial in nature. *See* Pet. ¶ 2; *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 103–04 (D.C. Cir. 2015) (defining commercial as "matters or relationships, whether contractual or not, that arise out of or in connection with commerce"). And the arbitration award is not entirely domestic in scope, as it was issued in the United Arab Emirates to resolve a dispute between a

"Dubai free-zone limited liability company established under the laws of the United Arab Emirates," Pet. ¶ 2, and "an agency of the Government of Afghanistan," *id.* ¶ 8, over a contract for services in Afghanistan, *see id.* ¶ 3; Arbitration Award; *see also, e.g.*, *Compagnie Sahélienne d'Entreprise*, 2021 WL 2417105, at *2 (finding that the subject matter is not entirely domestic in scope where "the award was issued in France and the dispute is between two foreign parties over a contract performed in Guinea").

Because there is an arbitration agreement and an arbitration award governed by the New York Convention, the arbitration exception to the FSIA applies and the Court has subject-matter jurisdiction to resolve this dispute. *See* 28 U.S.C. § 1330(a) ("The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.").

### 2. Personal Jurisdiction

A court also needs to "satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Mwani*, 417 F.3d at 6. In the case of default judgment, the plaintiff need only raise a prima facie case of personal jurisdiction. *See id.* at 7 (reversing a district court's dismissal for lack of personal jurisdiction under the preponderance of evidence standard).

The FSIA provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction . . . where service has been made under section 1608 of this title." 28 U.S.C. § 1330(b). Section 1608(b) sets forth three ways a plaintiff may serve an agency or instrumentality of a foreign state: (1) "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the

7

plaintiff and the agency or instrumentality," (2) "by delivery of a copy of the summons and complaint either to an officer, a managing or general agent," or another agent authorized to receive service in the United State or under "an applicable international convention on service of judicial documents," or (3) (a) "by delivery of a copy of the summons and complaint" and "a translation of each into the official language of the foreign state" either "in response to a letter rogatory or request" from "an authority of the foreign state or political subdivision," (b) by mail sent "by the clerk of the court to the agency or instrumentality to be served" that requires a signed receipt, or (c) "as directed by order of the court consistent with the law of the place where service is to be made." 28 U.S.C. § 1608(b). "[A] plaintiff must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012) (quotation omitted).

The Olive Group has satisfied its burden. The first two service methods were unavailable because no "special agreement" for service exists, *see* Mot. Alt. Service of Process at 2–3, ECF No. 4; 28 U.S.C. § 1608(b)(1), and Afghanistan is not a party to any relevant international convention for the service of documents, *see* Mot. Alt. Service of Process at 4; 28 U.S.C. § 1608(b)(2). So the Olive Group instead attempted the third method of service. And the first two options failed because "Afghanistan has no certified mail services or recognized government that could aid in the execution of letters rogatory," Mot. Alt. Service of Process at 4; 28 U.S.C. § 1608(b)(3)(1), and "[a]ccording to the U.S. Postal Service's website, recorded delivery, which is the international service equivalent of domestic certified mail, is not available for Afghanistan," Mot. Alt. Service of Process at 4–5; 28 U.S.C. § 1608(b)(3)(2).

The Olive Group ultimately accomplished service through the final option as directed by the Court "through a combination of email to several of [the Defendant's] representatives, email

to a general-purpose email address listed on the website of Afghanistan's Ministry of Transport & Aviation, and express mail delivery (DHL) to [the] Respondent's office located in Kabul, Afghanistan." Mot. Alt. Service of Process at 7. The Court initially ordered the Olive Group to serve the ACAA by emailing a copy of the relevant documents to three named representatives of the Defendant and "a general purpose email address listed on the website of Afghanistan's Ministry of Transport & Aviation," and mailing the documents to Ministry of Transport & Aviation in Afghanistan. Order at 1–2 (granting motion for alternative service), ECF No. 6. The Olive Group could not comply with the mailing requirement because "no express mail [wa]s being delivered to Kabul, Afghanistan" at the time. Second Mot. Alt. Service at 3, ECF No. 7. So it requested permission "to serve[the Defendant] . . . by sending the Petition Papers via express mail to the Consulate General of Afghanistan in Dubai, United Arab Emirates," "which is the only official diplomatic presence that the current Government of Afghanistan and its agencies have outside of Afghanistan." *Id.* at 3. The Court granted this request. *See* Order at 1–2, ECF No. 8 (granting second motion for alternative service). The Olive Group complied with the Court's orders, and the ACAA was served on November 4, 2024. *See* Return of Service/Affidavit, ECF No. 9. The ACAA thus had until January 3, 2025, to respond, which it failed to do. *See* 28 U.S.C. § 1608(d) ("a foreign state . . . shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section."). Finding that service was proper under § 1608(b)(3)(C), the Court has personal jurisdiction over the ACAA.[1]

---

[1] The Court is also satisfied that venue is proper in this District. *See* 28 U.S.C. § 1391(f)(4) ("A civil action against a foreign state as defined in section 1603(a) of this title may be brought . . . in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.").

C.    **Right to Relief**

Under the FSIA, "[n]o judgment by default shall be entered by a court of the United States . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). The Olive Group must therefore show that it is entitled to confirmation of the arbitral award against the ACAA under the New York Convention. It may meet this burden through affidavits and declarations. *See Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 20 (D.D.C. 2009). The Olive Group has demonstrated its entitlement to relief.

The New York Convention requires a district court to "confirm" an arbitration award if "any party to the arbitration" applies for such an order within "three years after [the] award" "unless [the court] finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention." 9 U.S.C. § 207. The party applying for recognition and enforcement must provide the "duly authenticated original award or a duly certified copy" and "[t]he original agreement" or "a duly certified copy[.]" N.Y. Convention art. IV. If those requirements are met, courts have "little discretion in refusing or deferring enforcement of foreign arbitral awards: the Convention is 'clear' that a court 'may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.'" *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007)).

Article V of the Convention lays out seven grounds for refusal. For the first five, the party resisting confirmation must provide proof that:

> (a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

10

> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. V(1)(a)–(e), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3. The remaining two grounds permit a court to "refuse" confirming if it finds that "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country" or "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." New York Convention, art. V(2). The party resisting confirmation "bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V applies." *Sterling Merch. Fin. Ltd. V. Rep. of Cabo Verde*, 261 F. Supp. 3d 48, 53 (D.D.C. 2017) (cleaned up).

With these requirements in mind, the Olive Group has met its burden. It brought this lawsuit seeking confirmation of the arbitration award within three years of the award. *See* 9 U.S.C. § 207; Arbitration Award at 1 (final award rendered on November 28, 2023); Pet. at 1 (lawsuit filed on July 24, 2024). And it has provided the Court with a "duly certified copy" of both the award and the agreement under which the parties agreed to submit to arbitration. *See* N.Y. Convention art. II, IV; Arbitration Award; Contract Agreement.

11

The ACAA has defaulted and thus not raised any of the available Article V defenses, much less provided "proof" for why the arbitration award should not be enforced. *See* Art. V(1)(a)–(e); *supra* at 11; *see, e.g.*, *Compagnie Sahélienne d'Entreprise*, 2021 WL 2417105, at *4 (finding that the opposing party did not meet its burden under the New York Convention by failing to appear or raise any defenses). And the remaining two grounds for refusal are inapplicable. Nothing in the record suggests that the underlying contract dispute could not be settled by arbitration. To the contrary, a breach of contract dispute is "surely capable of settlement by arbitration[.]" *See Omni Bridgeway Ltd.*, 2025 WL 506570, at *8. And the Supreme Court has recognized an "emphatic federal policy in favor of arbitral dispute resolution" that "appl[ies] with special force in the field of international commerce[.]" *See Belize*, 668 F.3d at 727 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). On this record, the Olive Group has demonstrated its entitlement to relief under the New York Convention.

## CONCLUSION

For the foregoing reasons, the Court grants the Plaintiff's Motion for Default Judgment, ECF No. 15, and confirms the arbitration award. The Court orders the Afghanistan Civil Aviation Authority to pay the Olive Group FZ-LLC the arbitration award of $15,286,002.30, at a post-award interest rate of 3%, accruing from December 28, 2023, until full payment is made.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   June 12, 2025