IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OLIVE GROUP FZ-LLC | )<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) Civil Action No. 1:24-cv-02170-SLS |
| v. | )<br>) |
| AFGHANISTAN CIVIL AVIATION AUTHORITY, | )<br>)<br>)<br>)<br>) |
| Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) |

**NON-PARTY INTERNATIONAL AIR TRANSPORTATION ASSOCIATION'S
VERIFIED ANSWERS TO WRIT OF ATTACHMENT INTERROGATORIES**

Non-party International Air Transportation Association ("IATA"), pursuant to D.C. Code § 16-552, hereby responds to the Writ of Attachment Interrogatories ("Interrogatories") issued by Plaintiff Olive Group FZ-LLC in connection with the Writ of Attachment on Judgment Other Than Wages, Salary, and Commissions. In responding to these Interrogatories, IATA does not concede jurisdiction exists for this Court to issue or to enforce a writ of attachment or writ of garnishment pertaining to the funds described herein ("the Funds"). IATA is a Canadian entity headquartered in Montreal, Canada, and with its principal executive offices in Geneva, Switzerland. IATA has only a limited presence in the United States, consisting of a government affairs office in Washington, DC and an Americas-region operations office in Miami, Florida. The Funds were collected outside of the United States and presently are held (and have been held for a number of years) in a frozen Swiss bank account as described in

greater detail in IATA's Responses below. The Funds have been frozen due to the Taliban takeover of most aspects of the Afghan government, which IATA understands to encompass Taliban control over the Afghanistan Civil Aviation Authority ("ACAA"). Because the Taliban is a designated terrorist organization under United States, Canadian, and Swiss law, and is subject to extensive international sanctions, any order compelling transfer of the Funds risks placing IATA (and potentially Plaintiffs and this Court) in direct conflict with various United States and international laws.

While IATA has no intention of obstructing this Court in its lawful processes, it respectfully submits that the extraordinary circumstances here demand heightened scrutiny and caution. IATA respectfully requests that, prior to issuing or enforcing any writs against the Funds, this Court require the Plaintiff to (i) establish personal and subject matter over IATA and the Funds; (ii) demonstrate statutory authority to reach assets located abroad and held in a foreign financial institution; and (iii) obtain and submit all necessary government approvals/exceptions required under United States and applicable international law permitting IATA to disburse the Funds, including but not limited to those laws enumerated in this Response. IATA objects to this Writ of Attachment and to these Interrogatories to the extent they purport to require IATA to take any action contrary to applicable United States law, foreign law, or international obligations. Subject to this objection, and without waiving any defenses, privileges, or immunities, IATA states as follows:

**Interrogatory 1: Were you at the time of the service of the writ of attachment, or have you been between the time of such service and the filing of your answers to this interrogatory indebted to the defendant(s), and, if so, how, and in what amount?**

Response to Interrogatory 1: No.

**Interrogatory 2: Had you at the time of the writ of attachment, or have you had between the time of such service and the filing of your answer to this interrogatory, any goods, chattel, or credits of the defendant(s) in you[r] possession or charge, and, if so, what?**

Response to Interrogatory 2: Yes. One service provided by IATA is the collection of airspace fees paid by airlines for the rights to pass through airspace belonging to various countries. Those funds are then disbursed to the countries' designated agencies, of which the ACAA is one. Incident to that service, which IATA no longer provides to ACAA due to sanctions, IATA has collected and presently holds airspace fees in the amount of approximately $3,171,426.75 on behalf of ACAA ("the Funds").[1] The Funds are held in a Union Bank of Switzerland ("UBS") account administered in Switzerland, outside of the jurisdiction of this Court.

In addition to potential jurisdictional limitations relating to the UBS account location, as a Canadian entity, IATA is bound by Canadian laws. The Funds are currently frozen pursuant to the requirements of the Canadian Criminal Code, and have been so for approximately the last four years due to the takeover of Afghan government by the Taliban (a designated terrorist group under Canadian Criminal Code). The Canadian Criminal Code sets out a number of prohibitions related to dealings with terrorist groups, including prohibitions on "dealing directly or indirectly in any property that is owned or controlled by or on behalf of a terrorist group" and "entering into or facilitating, directly or indirectly, any transaction in respect of" such

---

[1] Because these funds are held internationally, the precise value of these funds fluctuates in relation to relevant currency exchange rates.

property. Criminal Code, RSC 1985 c C-46, ss. 83.08(a) – 83.08(b). As such, even if the Court has jurisdiction to order the release of the Funds—and it likely does not—IATA is prohibited from releasing the Funds without written authorization from the Canadian Minister of Public Safety and Emergency Preparedness.

Given the location of the relevant UBS account in Switzerland, IATA also has sought to determine whether additional barriers to release of the Funds exist under Swiss law. These inquiries confirmed that, pursuant to Article 3, Paragraph 1 of the Ordinance on measures against persons and entities associated with Osama bin Laden, the Al-Qaida group, or the Taliban (RS 946.203), all assets owned or controlled (directly or indirectly) by the persons or entities enumerated under the Ordinance must be frozen. For context, please reference Exhibit A, a September 30, 2021 letter from the Swiss State Secretariat for Economic Affairs ("SECO"). IATA understands that SECO must be notified in advance and grant prior authorization for any frozen assets to be unfrozen or disbursed.

In light of the above, while IATA does possess funds that were collected on behalf of the ACAA, IATA makes no assurances or representations regarding its ability to disburse those funds absent express authorization from the relevant Canadian and Swiss authorities (or other relevant international authorities). IATA makes these responses without waiving any rights or obligations to resist disbursement pursuant to the limitations enumerated above, or any other legal prohibition on the discharge of the Funds.

So declared under penalty of perjury that the answers to the above interrogatories are, to the best of my knowledge and belief, true and correct as to every material matter.

_____
Cedric Chretien
Head Settlement Operations
International Air Transport Association

Date: 25 August 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2025, I served the foregoing on counsel of record for Plaintiff via email and on Defendant via USPS certified mail to the addresses below.

Enayat Qasimi
Jeffrey Seaman
WHITEFORD, TAYLOR & PRESTON LLP
1800 M Street NW, Suite 450N
Washington, DC 20036
eqasimi@whitefordlaw.com
jseaman@whitefordlaw.com
Tel:  (202) 659-6792
Fax: (202) 327-6174

*Counsel for Plaintiff*


Consulate General of Afghanistan
27727 92292 Villa 23
29B Str. – Makani No.: Al Jafiliya
Dubai, United Arad Emirates

Afghanistan Civil Aviation Authority
c/o Ministry of Transport & Aviation
01 RTA Road
Ansari Watt
Kabul, Afghanistan


*/s/ Kathleen Cooperstein*
Kathleen Cooperstein
Wiley Rein LLP
2050 M Street NW
Washington, DC 20036
Tel: (202) 719-7000
KCooperstein@wiley.law

1