**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

OLIVE GROUP FZ-LLC,

    *Petitioner*,

  v.

AFGHANISTAN CIVIL AVIATION
AUTHORITY,

    *Respondent*.

Civil Action No. 24 - 2170 (SLS)

Judge Sparkle L. Sooknanan

## MEMORANDUM OPINION

Olive Group FZ-LLC, a Dubai-based security services company, filed this action in 2024 to enforce an arbitration award that it obtained against the Afghanistan Civil Aviation Authority (ACAA) for breach of contract. In June 2025, after the ACAA failed to answer or otherwise appear, this Court granted default judgment to Olive Group and confirmed the $15,286,002.30 arbitral award. *See Olive Grp. FZ-LLC v. Afghanistan Civ. Aviation Auth.*, No. 24-cv-2170, 2025 WL 1662961, at *6 (D.D.C. June 12, 2025). Olive Group now asks the Court to garnish assets held by the International Air Transport Association (IATA) in a Swiss bank account to satisfy part of the Court's judgment against the ACAA. Because this Court lacks personal jurisdiction over IATA, it denies Olive Group's request.

## BACKGROUND

IATA is an association incorporated in Canada that represents and serves commercial airlines. *See* Interrog. Answer, at 1, ECF No. 30; Mot. Dismiss 2, ECF No. 32-1. Among its services, IATA collects the airspace fees paid by airlines for the rights to pass through airspace belonging to other countries and disburses them to the air transport agencies for those countries.

Mot. Dismiss 2. Prior to 2021, IATA collected airspace fees owed to the ACAA and held them in a Swiss bank account. Interrog. Answer, at 2–3. In 2021, IATA terminated its relationship with the ACAA after the Taliban—a designated terrorist group in the United States, Switzerland, and Canada—seized control of the Afghan state. *Id.* at 2. Since then, IATA has frozen the Swiss bank account containing funds owed to the ACAA, in part because of concerns that any movement of these assets may violate Swiss and Canadian anti-terrorism law. *Id.* at 3. The account presently contains approximately $3.1 million. *Id.* Olive Group seeks to garnish the entire balance to satisfy part of its judgment against the ACAA. Appl. 1, ECF Nos. 37 & 38.[1] Olive Group's application is fully briefed and ripe for review. *See* Resp., ECF No. 39; Reply, ECF No. 40; Suppl., ECF No. 41; Mot. Dismiss, ECF No. 32; Opp'n Mot. Dismiss, ECF No. 33; Reply Mot. Dismiss, ECF No. 35.[2]

## LEGAL STANDARD

A "prevailing party may garnish funds contractually owed to the award debtor by a third party to satisfy [an] arbitral award." Restatement (Third) U.S. Law of Int'l Comm. Arb. § 4.25, rep. note iii (2023) (characterizing *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC.*, 438 F.3d 298, 320 (3d Cir. 2006)). "However, in order to garnish a third-party debt, the award creditor must establish [personal] jurisdiction over the garnishee." *Id.* (citing *FG Hemisphere Assocs., LLC v. République du Congo*, 455 F.3d 575, 585 (5th Cir. 2006)); *see also Goldberg v. S. Builders*, 184 F.2d 345, 348 (D.C. Cir. 1950). "The plaintiff bears the burden of establishing personal jurisdiction." *FDIC v. U.S. Titles, Inc.*, 939 F. Supp. 2d 30, 33 (D.D.C. 2013).

---

[1] Olive Group filed two seemingly identical applications. ECF Nos. 37 & 38. The Court presumes that this was done in error and considers the applications together.

[2] In addition to opposing Olive Group's application for garnishment, IATA separately moved to dismiss for *forum non conveniens*. Mot. Dismiss, ECF No. 32. Because the Court lacks personal jurisdiction, the Court need not address that motion and denies it as moot.

Personal jurisdiction can be established in three ways. "First, 'specific jurisdiction' permits suits that 'arise out of or relate to' a [] defendant's activities in the forum State." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 137 (2023) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). Second, a court may exercise "general jurisdiction" over any claim "when a defendant is 'essentially at home' in the State." *Ford Motor*, 592 U.S. at 358 (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)). Third, "express or implied consent" can serve as a "ground" for "personal jurisdiction" as well. *Mallory*, 600 U.S. at 138 (quotation omitted).

## DISCUSSION

The Parties dispute whether this Court has personal jurisdiction to grant Olive Group a judgment of garnishment. Generally, "a federal court only has personal jurisdiction over a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Winmar Constr., Inc. v. ESF, Inc.*, No. 22-cv-1829, 2023 WL 1778201, at *2 (D.D.C. Feb. 6, 2023) (quoting Fed. R. Civ. P. 4(k)(1)(A)).[3] And, under D.C. Code § 13-334(a), a District of Columbia court "can exercise jurisdiction over a foreign corporation 'doing business' in the District.'" *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 889 (D.C. Cir. 2021) (quoting D.C. Code § 13-334(a)). "[T]he reach of 'doing business' jurisdiction under § 13-334(a) is co-extensive with the reach of constitutional due process." *Id.* (quoting *FC Inv. Grp. LC v. IFX*

---

[3] An exception exists where a "defendant is not subject to jurisdiction in any state's courts of general jurisdiction." Fed. R. Civ. P. 4(k)(2)(A). Because Olive Group asserts that IATA is subject to the jurisdiction of Florida courts, that exception is not implicated here. *See* Opp'n Mot. Dismiss 4.

*Markets, Ltd.*, 529 F.3d 1087, 1092 (D.C. Cir. 2008)).[4] Thus, this Court must examine whether the exercise of personal jurisdiction in this garnishment action would conform with due process. The Court concludes that it does not.

### A.    General Jurisdiction

Olive Group primarily argues that this Court has general or all-purpose jurisdiction over IATA in this action. Specifically, Olive Group claims "that IATA's longstanding, continuous, deliberate and focused physical presence in the District of Columbia, where it plainly and admittedly 'does business' is a sufficient basis for the Court's exercise of personal jurisdiction over IATA." Reply 1. Olive Group is wrong.

"[E]ngaging in a substantial, continuous, and systematic course of business in the forum is not, in and of itself, enough for general jurisdiction to comport with due process." *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 15 (D.D.C. 2014) (cleaned up). Although such activities may have been enough to show jurisdiction in the 1800s, *see Pennoyer v. Neff*, 95 U.S. 714 (1878), the "doing business" rationale of all-purpose jurisdiction has been flatly rejected by the current Supreme Court as a relic of outmoded jurisprudence that "should not attract heavy reliance today," *Daimler AG v. Bauman*, 571 U.S. 117, 138 n.17 (2014). Olive Group fails to address the current jurisprudence, which instructs that "regularly and actively conducting business activities, in a forum is insufficient, without more, to confer general personal jurisdiction." *Farah v. Gov't of Republic of Somaliland*, No. 23-cv-1205, 2024 WL 3985165, at *6 (D.D.C. Aug. 29, 2024) (cleaned up). General jurisdiction only exists where "affiliations . . . are so 'continuous and

---

[4] To establish jurisdiction under Section 13-334(a), a plaintiff must serve a corporation in the District of Columbia. *See Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 889 (D.C. Cir. 2021). Here, service was conducted in Virginia, not in the District. Affidavit of Service, ECF No. 28. Because IATA does not dispute service, however, the Court does not address the propriety of service. *See Erwin-Simpson*, 985 F.3d at 889 (adopting similar approach).

systematic' as to render [a party] essentially at home." *Daimler*, 571 U.S. at 139 (cleaned up).

For a corporation, absent an "exceptional case," it is subject to general jurisdiction in "its place of incorporation and principal place of business." *Ford Motor*, 592 U.S. at 359 (cleaned up). And in the "exceptional case," a corporation may be "at home" when a forum "could be considered a surrogate for the place of incorporation or head office" because its "key management decisions" and "activities [a]re directed" from there instead. *Daimler*, 571 U.S. at 130 n.8, 138 n.18 (characterizing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)).

Olive Group has not established that the District is any of those places. First, Olive Group does not suggest that IATA's "place of incorporation" is in the District. *Daimler*, 571 U.S. at 139. Second, Olive Group asserts that IATA's North American headquarters is in Miami, Florida, Opp'n Mot. Dismiss 4, which, at best, would make IATA's principal place of business—*i.e.*, its "corporate headquarters" or "nerve center"—Florida, not the District, *Hertz Corp. v. Friend*, 559 U.S. 77, 93, 97 (2010).[5] And third, Olive Group makes no showing that IATA's "actual center of direction, control, and coordination" exists outside Miami, Florida. *Id.* at 93. Thus, based on Olive Group's own assertions, IATA is not "at home" in the District. *See Daimler*, 571 U.S. at 139.

Olive Group's contrary arguments are misguided. Olive Group almost exclusively relies on an outmoded "doing business" theory of general jurisdiction, arguing that IATA "is resident in the District" because it has leased office space for fourteen and a half years and has two employees working in the District. Appl. 2. But "the mere fact that [IATA] has an office in this district is insufficient to confer general jurisdiction over it here." *Han v. Fin. Supervisory Serv.*, No. 18-cv-141, 2019 WL 13253806, at *21 (D.D.C. Sep. 9, 2019). And two employees are hardly enough to

---

[5] The Court notes that the Parties dispute whether Olive Group has any principal place of business in the United States. *See* Opp'n Mot. Dismiss 4; Appl. Resp. 2. Olive Group claims that its principal place of business is Montreal, Canada.

suggest that this District is IATA's principal place of business. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017) (2,000 employees in a state was insufficient to establish general jurisdiction). "[E]ven a substantial physical presence in the forum is not enough to assert general jurisdiction." *Holland v. Cardem Ins. Co.*, No. 19-cv-2362, 2021 WL 7448018, at \*16 (D.D.C. Dec. 7, 2021).

### B.    Other Bases for Jurisdiction

Olive Group has not presented any bases for personal jurisdiction other than its general "doing business" rationale. *See* Reply 1–3. But for the sake of completeness, the Court briefly addresses the only other forms of personal jurisdiction consistent with due process: specific and consent-based jurisdiction. *See Alpine Consulting Partners, LLC. v. Jacokes*, No. 25-cv-913, 2025 WL 2959574, at \*2 (D.D.C. Oct. 17, 2025). Specific jurisdiction satisfies the Due Process Clause when it "arise[s] out of or relate[s] to" a party's "contacts with the forum." *Ford Motor*, 592 U.S. at 362 (cleaned up). The only IATA–District contacts that Olive Group identifies are the association's lease agreements, employee payroll tax payments, lobbying, coordination with other air transport groups, and regulatory advocacy. Appl. 2–3, 5. And it is not clear how its managing funds for the ACAA "ar[o]se out of or relate[d] to" this type of activity.[6] *Ford Motor*, 592 U.S. at 352 (cleaned up). Further, IATA manifestly has not consented to personal jurisdiction. *See* Appl.; Reply. So there is no other basis for this Court to exercise personal jurisdiction over IATA in this suit.

---

[6] Olive Group appears to disclaim reliance on specific jurisdiction by expressly arguing that IATA's "long-arm [statute] analysis is misplaced" because Olive Group's basis for jurisdiction in this case is "residen[cy]." Appl. 2 n.2. And of course, the "long-arm statute" analysis is necessary to establish specific jurisdiction. *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). The D.C. Code's general long-arm statute, like the constitutional standard, requires a claim to "aris[e] from" a party's "transacting any business in the District of Columbia." D.C. Code § 13-423.

6

### C.    Judicial Estoppel

Perhaps recognizing the shortcomings of its personal jurisdiction arguments, Olive Group argues that IATA is judicially estopped from challenging general jurisdiction in this case. Reply 3. Specifically, Olive Group contends that IATA may not now contest jurisdiction because in a lawsuit filed ten years ago, it represented that the District is its principal place of business. Compl. ¶ 22 (*Air Transport* Compl.), ECF No. 40-1, *Air Transp. Ass'n of America, Inc., v. U.S. Dep't of Agriculture*, No. 16-cv-919 (D.D.C.). The Court disagrees.

Judicial estoppel is an equitable doctrine where a court may bar "a party that successfully asserts a position in litigation" from "thereafter, simply because his interests have changed, assum[ing] a contrary position" in a later case. *Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 317 (D.D.C. 2018) (cleaned up). The doctrine serves "to protect the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (cleaned up). The decision to judicially estop is left to the discretion of a district court. *Id.* at 750. In making this determination, courts usually consider: (1) whether the party's "later position" is "clearly inconsistent with its earlier position"; (2) whether "the party has succeeded in persuading a court to accept that party's earlier position," creating "the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51 (cleaned up). These factors, on balance, weigh against the application of judicial estoppel in this case.

*Clear Inconsistency*. In *Air Transport Association*, filed in 2016, IATA and its co-plaintiff, the Air Transport Association of America, sued the Department of Agriculture and other federal agencies. In the complaint, they alleged that they and all the defendants "reside[d] in the District of Columbia" for the purposes of venue under 28 U.S.C. § 1391. *Air Transport* Compl. ¶ 22. And

under the venue statute, a corporate plaintiff "reside[s] . . . only in the judicial district in which it maintains its principal place of business." 28 U.S.C. § 1391(c)(2). Although venue and jurisdiction are distinct, the term "principal place of business" means the same thing for both analyses. *See Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-1601, 2025 WL 2939229, at \*4 (N.D. Cal. Oct. 16, 2025). And so IATA's current assertion that its principal place of business is not in the District, Resp. 2, is "clearly inconsistent with its earlier position," *New Hampshire*, 532 U.S. at 750. Thus, this factor weighs in Olive Group's favor.

*Success in Prior Proceeding.* Turning to the second factor, IATA did not successfully "persuad[e] a court to accept" its position that its principal place of business was in the District of Columbia in *Air Transport Association. Id.* at 751. Neither venue nor IATA's principal place of business was litigated in that case. *See* IATA Suppl. 3; *Air Transp. Ass'n of Am., Inc. v. U.S. Dep't of Agric.*, 303 F. Supp. 3d 28 (D.D.C. 2018) (explaining grounds upon which the defendants moved to dismiss); *Air Transp. Ass'n of Am., Inc. v. U.S. Dep't of Agric.*, 37 F.4th 667, 669–72 (D.C. Cir. 2022) (outlining the procedural history of the case). And venue in the District was undoubtedly proper for reasons unrelated to IATA, as the defendants were federal agency residents of the District of Columbia. *See, e.g.*, *Alhaddad v. DHS*, No. 25-cv-2278, 2025 WL 3715005, at \*2 n.2 (D.D.C. Dec. 23, 2025). This factor thus weighs in IATA's favor.

*Unfair Disadvantage.* The final factor turns on whether IATA would obtain an unfair advantage if the Court finds that it does not have personal jurisdiction over the association. It is possible to view the inconsistency in IATA's representations as an "unfair advantage"—IATA's first representation provided it with an additional basis for venue that allowed its affirmative lawsuit to proceed in this District, and IATA's contrary position now permits it to escape the Court's jurisdiction when another entity seeks relief against IATA. *See New Hampshire*, 532 U.S.

8

at 751. On the other hand, IATA's prior representation had very little impact, if any, on whether that earlier lawsuit could be brought in the District, as venue could clearly be established on other bases. Indeed, the inclusion of IATA in a long list of entities that "reside[d] in the District of Columbia" at the time of that lawsuit may well be the product of inattentive draftsmanship. *See Air Transport* Compl. ¶ 22 (including IATA in a list with the Air Transport Association of America, the U.S. Customs and Border Protection, the Department of Homeland Security, and the Department of Agriculture, as entities that reside in the District). To be sure, careless drafting in legal pleadings is not inconsequential. But it falls far short of the concerns about parties advantageously and "deliberately changing positions" that underlie the judicial estoppel doctrine. *New Hampshire*, 532 U.S. at 750–51 (cleaned up). Furthermore, declining to judicially estop IATA from contesting personal jurisdiction in this case would not "impose an unfair detriment" on Olive Group. *Id.* at 751. Indeed, Olive Group has already brought a near-identical garnishment action against IATA in the Southern District of Florida, where Olive Group alleges that IATA is truly headquartered (and thus, according to Olive Group, has its principal place of business). Opp'n Mot. Dismiss 4–5. For these reasons, this factor tilts slightly in IATA's favor.

Weighing the factors in totality, the Court declines to exercise its discretion to judicially estop IATA from contesting personal jurisdiction in this action.

*       *       *

In sum, the Court lacks jurisdiction over IATA and therefore cannot grant Olive Group's application to garnish the funds owed to the ACAA held in Switzerland. And judicial estoppel does not countermand that result.

## CONCLUSION

For these reasons, the Court denies Olive Group's Application for Judgment of Garnishment, ECF Nos. 37 & 38.

A separate order will issue.

            _____

SPARKLE L. SOOKNANAN
United States District Judge

Date:   May 5, 2026